UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES LETT** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-2921** |
| **OMEGA PROTEIN, INC.,** *in personam*, **F/V ANNA,** *in rem*, **AND F/V TIGER POINT,** *in rem* | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Omega Protein, Inc.'s Motion for Summary Judgment (Doc. #39) is **GRANTED**, and plaintiff's claims against Omega, the F/V ANNA, and the F/V TIGER POINT are **DISMISSED WITH PREJUDICE**.

### BACKGROUND

Plaintiff, James Lett, filed this action against his former employer, Omega Protein, Inc. ("Omega"), *in personam*, and two of Omega's fishing vessels, the F/V ANNA and the F/V TIGER POINT, *in rem*, in the United States District Court for the Eastern District of Louisiana alleging claims under the Jones Act, 46 U.S.C. § 30104, for unseaworthiness, and for maintenance and cure. Lett claims that he was injured while working aboard the F/V TIGER POINT in 2008, and while working aboard the F/V ANNA in 2009.

In 2008, Lett, was employed by Omega as the chief engineer aboard F/V TIGER POINT. As the chief engineer, he was responsible for maintaining the engine room, which included chipping and painting. On September 15, 2008, Lett used a needle gun to chip the floor of the upper engine room. He alleges that he worked on his hands and knees for five hours to perform this task, which

extended use caused injuries to his back, head, neck, and legs. Nobody witnessed an accident, and Lett did not report an injury to Omega.

In 2009, Lett was employed by Omega as the second engineer on the F/V ANNA. Throughout the fishing season, Lett lifted hatch covers. He alleges that the hatch covers, weighing an average of 85 pounds, were too heavy, and repeatedly lifting and maneuvering them aggravated the back, head, neck, and leg injuries he sustained in 2008. Nobody witnessed an accident, and Lett did not report an injury to Omega.

Lett alleges that Omega was negligent for failing to properly supervise and train him in performing the chipping work and lifting the hatch covers, failing to provide adequate safety and chipping equipment, failing to provide an adequate work-rest schedule, failing to safely operate the vessels, and operating the vessels with inadequate crews. He also alleges that the F/V TIGER POINT and the F/V ANNA were unseaworthy, and that Omega owes him maintenance and cure.

Omega filed a motion for summary judgment arguing that it was not negligent, its vessels were seaworthy, and it does not owe Lett maintenance and cure.

## ANALYSIS

**A.   Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the

existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Lett's Jones Act Negligence and Unseaworthiness Claims**

Under the Jones Act, 46 U.S.C. § 30104, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. See Gautreaux v. Sculock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (*en banc*). A Jones Act employer "has an unqualified duty to furnish a vessel and appurtenances reasonably safe and fit for their intended use." Ivy v. Security Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir. 1978). The employer is held to a standard of ordinary prudence under the circumstances, and "is negligent only if he fails to use reasonable care to maintain a reasonably safe place to work." Id.; see also Gautreaux, 107 F.3d at 335. "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." Id. The terms "slightest" and "featherweight" have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury. Id.; Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenback Overseas Corp., 91 S.Ct. 514, 517 (1971). The duty to provide

a seaworthy vessel is absolute and completely independent of the duty under the Jones Act to exercise reasonable care; therefore, a showing of negligence is not required. See Phillips v. W. Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.'" Simeon v. T. Smith & Son, Inc., 852 F.2d 1432, 1432-33 (5th Cir. 1988). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 1992).

      **1.**       **Alleged Injury Aboard the F/V TIGER POINT on September 15, 2008**

Lett alleges that using a needle gun to chip the floor of the upper engine room of the F/V TIGER POINT for five hours on September 15, 2008, caused him to sustain injuries to his back, head, neck, and legs. He contends that the needle gun furnished by Omega was insufficient for performing the task, that he was not properly trained or supervised, and that Omega did not provide safety equipment to address the needle gun's vibrations.

At his deposition, Lett testified that maintaining the engine room, including chipping, was a part of his duties as the vessel's chief engineer. He testified that nobody directed him to do the chipping on September 15, 2008. Further, he testified that the needle gun was working properly.

Mike Lombardo is Omega's safety, health, and environment director at the Cameron, Louisiana plant. He testified at his deposition that he is 65 years old, has been in the maritime industry since he was 17 years old, and has worked with needle guns that entire time. He testified that it is a normal part of life at sea because there is a constant battle against rust. Specifically, he

testified "Needle guns basically are to a sailor like a hammer is to a carpenter." He also stated that using a needle gun is very simple and that there are requirements for protecting the users eyes and ears. According to Lombardo, there are no training programs for using a needle gun, and that having such training "would be like having a training program to open a door." Lombardo testified that he has never heard of any injury resulting from the vibration of a needle gun, and that they are made to be safe for use. Further, Lombardo testified that the chief engineer makes the decision whether to use a needle gun on rust in the engine room.

This testimony establishes that Omega was not negligent and the F/V TIGER POINT was not unseaworthy as alleged. Lett testified that the needle gun was not broken, and Lombardo testified that using a needle gun is simple and common in the maritime industry. Lett has not presented any evidence to establish that Omega was negligent, or that the vessel was unseaowrhty, because a working tool that is commonly used in the maritime industry was aboard the vessel. Further, Lett has not established that he was forced to work for five hours straight by any member of the vessel's crew. Indeed, he testified that nobody directed him to perform the chipping work on September 15, 2008. Lett has not established that Omega failed to use reasonable care in maintaining a reasonably safe workplace with respect to the operable needle gun, or that the needle gun was not reasonably fit and safe for its intended purpose. Therefore, Omega and the F/V TIGER POINT are entitled to summary judgment on Lett's Jones Act negligence and unseaworthiness claims for the alleged September 15, 2008, injury.

### 2.     Alleged Injury Aboard the F/V ANNA in 2009

Lett alleges that the repetitive action of lifting hatch covers throughout the fishing season on the F/V ANNA aggravated the injuries he sustained on September 15, 2008. Lett alleges that Omega was negligent and the F/V ANNA was unseaworthy because the hatch covers were too heavy. Lett contends that Omega had different, lighter hatch covers on other vessels. Lett's expert, Kenneth Kaigler, inspected the F/V ANNA's hatch covers, and found that it takes, at most, 45 pounds of pressure to lift them.

At his deposition, Lombardo testified that, at Omega's orientation, the seamen are instructed to ask for assistance if they cannot lift something. Also, he testified that it is understood that a seaman is not supposed to try to lift anything that is odd shaped or too heavy for one person.

Lud Leonard, Omega's vessel manager in the Cameron, Louisiana plant, testified at his deposition that he has never received any complaints about the hatch covers being too heavy. He also testified that the hatch covers are made of foam and fiberglass. The hatch covers were replaced on some vessels because they wore out and were letting the cold air out.

Lett has not presented any evidence that Omega was negligent for not replacing the allegedly heavier hatch covers, or that the alleged weight of the hatch covers on the F/V ANNA rendered the vessel unseaworthy. He has not established that Omega failed to use reasonable care in maintaining a reasonably safe workplace with respect to the hatch covers or that hatch covers were not reasonably fit and safe for their intended purpose. Therefore, Omega and the F/V ANNA are entitled to summary judgment on Lett's Jones Act negligence and unseaworthiness claims for the alleged 2009 injury.

**C.      Plaintiff's Maintenance and Cure Claim**

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Jauch v. Nautical Services, Inc., 470 F.3d 207, 212 (5th Cir. 2006). "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." Id.

**1.      Alleged Injury Aboard the F/V TIGER POINT on September 15, 2008**

Unless a seaman demands and is willfully denied maintenance and cure, he is not entitled to maintenance and cure for periods post-injury in which he is voluntarily employed as a seaman. Dowdle v. Offshore Express, Inc., 809 F.2d 259, 265 (5th Cir. 1987) (citing Pyles v. American Trading & Prod., Corp., 372 F.2d 611, 619 (5th Cir. 1967)). Further, a seaman cannot recover maintenance and cure "for the days in which he did not work and during which he, of his own volition, was not under medical treatment even as an outpatient." Pyles, 372 F.2d at 619. In Pyles, 372 F.2d at 619, the United States Court of Appeals for the Fifth Circuit stated:

> A seaman by voluntarily working at his accustomed trade rather than using maintenance and cure to speed his recovery cannot by those tactics enhance the liability of the shipowner any more than the shipowner can be permitted to minimize his liability by refusing to pay and forcing the seaman back to work.

Lett did not report the alleged September 15, 2008, injury to Omega and continued to work for Omega as a seaman during the 2009 fishing season. Further, he did not demand maintenance and cure from Omega until he filed this lawsuit on September 2, 2010. Thus, it was not Omega's willful failure to provide maintenance and cure which caused Lett to have to continue to work.

7

Rather, he continued to work of his own volition. Therefore, Lett is not entitled to maintenance and cure for the alleged September 15, 2008, injury.

### 2. Alleged Injury Aboard the F/V ANNA in 2009

"A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." Id. (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968)). "Concealment of one's condition will not preclude recovery of maintenance and cure under all circumstances." Id. "The concealment defense will only prevail if the vessel owner can show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." Id. "If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure." Id.

#### a. Intentional misrepresentation or concealed medical facts

On January 28, 2009, Lett saw Dr. Stephen West complaining of severe neck pain that radiated across his right shoulder and down his right arm. Dr. West prescribed medication to Lett for the pain.

On March 10, 2009, prior to the 2009 fishing season, Lett underwent a pre-employment physical. Lett did not tell the examining physician that he was experiencing neck pain, or that he was taking medication for such pain.

8

Therefore, Lett intentionally misrepresented or concealed this condition, and the first prong of McCorpen is satisified.

**b.      Materiality of concealed facts to employer's decision to hire plaintiff**

In his affidavit, Arnold W. Nidecker III, the human resources manager at Omega's Cameron, Louisiana plant, declared that crewmembers are put on seasonal leave at the end of each season, the captain must approve a crewmember's returning for the next season, and that the crew member must pass a pre-employment physical and attend orientation before each season.  Nidecker evaluates crewmembers to ensure that they are fit for duty.  Nidecker declared that Omega's policy is that all accidents and injuries be reported immediately, and that it is he who receives the accident and injury reports.  Nidecker never received a report of injury from Lett in 2008 or 2009.  Nidecker declared that if Lett had revealed his alleged 2008 injury, he would not have been hired for the 2009 season.

Lett has not presented any evidence to contradict Nidecker's sworn declaration.  Therefore, the second prong of McCorpen is satisified.

**c.      Connection between the concealed medical facts and the alleged injury**

"[T}here is no requirement that the present injury be identical to a previous injury.  All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 175 (5 th Cir. 2005).

Lett's own testimony is that the 2009 injury was an aggravation of the 2008 injury. Therefore, the third prong of McCorpen is satisfied, and Omega is entitled to summary judgment on Lett's maintenance and cure claim for the 2009 injury.

## CONCLUSION

**IT IS HEREBY ORDERED** that Omega Protein, Inc.'s Motion for Summary Judgment (Doc. #39) is **GRANTED**, and plaintiff's claims against Omega, the F/V ANNA, and the F/V TIGER POINT are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  16th  day of September, 2011.

*[signature]*
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**